**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Phillip G. Scott, | Civil No. 09-762 (RHK/JJG) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Warden Dwight Fondren, | |
| Respondent. | |

JEANNE J. GRAHAM, United States Magistrate Judge

Petitioner Phillip G. Scott brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner is currently incarcerated at the Federal Correctional Institution in Sandstone, Minnesota, and is proceeding on his own behalf. Respondent Dwight Fondren, the warden at that prison, is represented by Gregory Brooker and Chad Blumenfield of the United States Attorney's Office. The petition was referred to this Court pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

Petitioner is claiming that there was insufficient evidence to discipline him for possessing a hazardous tool while he was incarcerated at the Federal Prison Camp in Leavenworth, Kansas. He asks that the disciplinary findings be reversed, that the incident report be expunged, and that all sanctions be lifted.

## I.     BACKGROUND

On February 27, 2008, prison staff member J. Drinkard "was shaking down in A1," and noticed Petitioner's personal fan plugged into an electrical outlet behind Petitioner's bed. (Pet. at 11; Incident Rep. at 1, Feb. 27, 2008.) To access the outlet, Drinkard had to move the bed away

from the wall, sit on the bed, and lean over Petitioner's pillow. (*Id.*) He unscrewed the outlet

plate with his hands and looked inside. (*Id.*) Drinkard found a cellular phone, and Petitioner was

charged with possession of a hazardous tool. (*Id.*)

A disciplinary hearing was held on March 21, 2008. (Pet. at 12; Discipline Hr'g Officer

Rep. at 1, Mar. 31, 2008.) Although Petitioner had originally requested Officer Goodwin as his

staff representative, he later indicated in writing that he did not want a representative at the

hearing. (Kinyon Decl. Attach. B at 2, 5.) When the Discipline Hearing Officer (DHO) asked

Petitioner why he had changed his mind, Petitioner said he just did not need one. (Pet. at 13;

Discipline Hr'g Officer Rep. at 2.) Petitioner denied ownership of the phone and said anyone

could have put it there, but he did not call any witnesses or provide any documentary evidence.

(Pet. at 12, 13; Discipline Hr'g Officer Rep. at 1, 2.)

The DHO explained in his decision that the outlet was considered to be in Petitioner's

area because it was located immediately adjacent to his bed. (Pet. at 13; Discipline Hr'g Officer

Rep. at 2.) Furthermore, Petitioner's fan was plugged into the outlet, which demonstrated his

access to and control over the outlet. (*Id.*) The DHO reasoned that Petitioner should have noticed

the loose screws when he plugged his fan into the outlet. (*Id.*) Based on the prison's policy that

each inmate is responsible for ensuring that his area is free of contraband, Petitioner then should

have either checked inside the outlet or asked a staff member to tighten the screws until they

could not be removed by hand. (*Id.*) The DHO did not believe another inmate would have hidden

the phone in Petitioner's area, because that person would have had to sit on Petitioner's bed, lean

over his pillow, and unscrew the plate before he could retrieve the phone. (*Id.*)

Considering the outlet's proximity to Petitioner's bed and his exclusive use of the outlet

at the time the phone was found, the DHO found Petitioner guilty of possessing the phone. (*Id.*)

The DHO imposed sixty days in solitary confinement; limited Petitioner's phone, visitation, and commissary privileges; revoked forty-one days of good conduct time and sixty-two days of non-vested good conduct time; and recommended a disciplinary transfer. (Pet. at 14; Discipline Hr'g Officer Rep. at 3.)

Petitioner's appeal to the Regional Director was denied. The Regional Director upheld the findings of the DHO and further explained that a cellular telephone is considered a hazardous device because it can be used to facilitate an escape or to breach prison security. (Pet. at 16; Reg'l Admin. Remedy Resp. at 1, Sept. 3, 2008.) Petitioner's subsequent appeal to the National Inmate Appeals Administrator was also denied. (Pet. at 19; Nat'l Admin. Remedy Resp. at 1, Jan. 28, 2009.)

## II.  DISCUSSION

### A.  Sufficiency of the Evidence

Due process requires that there must be "some evidence" supporting a determination of guilt on a disciplinary charge against a prisoner. *See Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). Satisfying this standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. A prison guard's testimony or incident report is sufficient to provide some evidence. *Id.* at 456.

Petitioner claims—and Respondent does not refute—that the outlet in which the phone was hidden was located in a dormitory-style sleeping area. Relying on *Broussard v. Johnson*, 253 F.3d 874 (5th Cir. 2001), Petitioner argues that an inmate cannot be charged with possession of contraband that is found in a common area. In *Broussard*, a prison informant told staff

members that another inmate was planning to escape and had hidden a pair of bolt cutters in the kitchen area where he worked. *Id.* at 875. The only connection between the inmate and the bolt cutters was the concealment of the bolt cutters in the inmate's work area. *Id.* at 877. Because 100 other inmates also had access to this common area, the connection did not satisfy the "some evidence" standard. *Id.*

The common kitchen area in *Broussard* is simply not comparable to the outlet on the side of Petitioner's bed. The head of Petitioner's bed was pushed up against the outlet, and his personal fan was plugged into it. Other inmates would have been able to access the outlet only by moving Petitioner's bed away from the wall or sitting on the bed and leaning across the pillow. They would then have to unscrew and remove the face plate, take out the phone, and replace the face plate. It is highly unlikely that another inmate would intrude to this degree into Petitioner's personal sleeping area. It is equally improbable that this activity could have occurred undetected by Petitioner or another inmate. Thus, even though other inmates might have had some access to the outlet, they did not have equal access, and Petitioner's unique degree of access is sufficient to establish his possession of the phone under the "some evidence" standard. *See Ebeck v. Anderson*, No. 09-3123-CV-S-GAF, 2009 WL 3062015, at *2 (W.D. Mo. Sept. 18, 2009) (finding "some evidence" that contraband found under an inmate's bed belonged to the inmate, even though his bed was located in a common area); *Schulze v. Schultz*, No. 1:04-CV-06100, 2007 WL 1302434, at *2 (E.D. Cal. 2007) (finding "some evidence" that an inmate possessed contraband hidden in his trash can, even though the trash can was located in a dormitory housing 120 inmates).

## B. New Claims Raised in Petitioner's Reply

For the first time, Petitioner asserts in his Reply that he was denied a staff representative

and that he was not allowed to call witnesses at the disciplinary hearing. Not only did Petitioner fail to exhaust these claims, but it is not appropriate to raise new grounds for habeas relief in a reply, *see Christian v. Dingle*, Civ. No. 06-3056, 2008 WL 2467754, at *2 (D. Minn. June 16, 2008) (citations omitted); *Krotzer v. Morrison*, Civ. No. 06-1074, 2007 WL 1378424, at *1 (D. Minn. May 7, 2007). Accordingly, these claims should be summarily rejected.

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Phillip G. Scott's Petition for a Writ of Habeas Corpus (Doc. No. 1) be **DENIED**.

Dated: October 22, 2009                                   s/ *Jeanne J. Graham*

JEANNE J. GRAHAM
United States Magistrate Judge

**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **November 6, 2009**. A party may respond to the objections within ten days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made.